UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL G. WRIGHT and THERESA WRIGHT,
and their minor children E.W, M.W., N.W., and
R.W.,

                    Plaintiffs,
          v.                                          **DECISION AND ORDER**
                                                       11-CV-140S
HON. MARGARET O. SZCZUR, et al.,

                    Defendants.

# I. INTRODUCTION

*Pro se* Plaintiffs, Paul and Theresa Wright (the "Wrights"), on behalf of themselves and their minor children (the "Wright children"), bring this action, commenced February 15, 2011, against 58 defendants alleging various constitutional violations. Plaintiffs' complaint appears to request relief pursuant to 42 U.S.C. §1983 for violations of the First, Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments. Additionally, the Wrights request relief pursuant to the Perjury Act, 18 U.S.C. §1621, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 and 1968, and the Health Information Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104–191, 110 Stat.1936 (1996). Finally, the Wrights assert intentional infliction of emotional distress claims. Presently before this Court are twelve motions to dismiss from all the defendants except Linda and David Beckinghausen, and Dr. Wonhoon Park.[1,2] For the following reasons, all motions to dismiss are granted except those of the individual Erie County Defendants.

---

[1]For a review and a description of the defendants in this action, see the Wrights' Amended Complaint at pp.4-5 (Docket No. 71.)

[2]There are three other motions before this Court (Docket Nos. 80, 88, 89) which, by virtue of other rulings, will be dismissed as moot.

As an initial matter, to the extent that the Wrights seek to vindicate their children's rights, as *pro se* litigants, they are barred from doing so without an attorney. Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir.1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); see also Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 201 (2d Cir. 2002) (noting that "[i]n this Circuit, a non-attorney parent is precluded from representing his or her child in federal court" and that the district court should have ordered *pro se* plaintiff to obtain counsel in the district court). This rule is unaltered by Fed R. Civ. P. 17(c)(2). Berrios v. N.Y.C. Housing Auth., 564 F.3d 130, 134 (2d Cir. 2009). Indeed, this court is precluded from making a determination on the merits of the children's claims. Id. ("What the court may not properly do, however, is make a merits determination of claims filed on behalf of a minor or incompetent person who is not properly represented.").

Consequently, any claims involving the rights of the Wright children will be dismissed without prejudice and the Wrights will be permitted to re-plead those claims in the event they secure attorney representation.

## II. BACKGROUND

### A.    Facts[3]

The Wrights have four children, referred to in this litigation as "N.W.," "E.W.," M.W.," and "R.W." (Amended Complaint p. 1; Docket No. 71.) At some point in early 2008, New York's Office of Children and Family Services received a call about a problem at the Wright

---

[3]Plaintiffs have provided meager factual detail concerning the events about which they complain. There is no coherent pattern or timeline of events. Instead, their complaint consists largely of scattered accusations aimed at numerous and various defendants. Despite this, under the necessary liberal reading, the Wrights have stated one cognizable claim, discussed *infra*.

household, presumably involving the level of care that the Wrights were providing to their children.[4] (Id. ¶ 1.) This began a series of events about which the Wrights allege constitutional violations against every person and agency involved, implicating nearly the entire Bill of Rights. Their allegations can roughly be organized into four categories, a description of each follows.

## 1.    Medical Information

The first three pages of Plaintiffs' complaint concern allegations that various defendants unlawfully shared and disseminated the Wright's medical information in violation of HIPAA. (Id. ¶¶ 2-10.) Plaintiffs allege that this information was then used against them in subsequent custody proceedings. (Id.) Specifically, Plaintiffs allege that Annmarie Albanese, Dr. Barbara Stouter, Dr. James Panzeralla, Dr. David James, Dr. Cheryl Neely, Dr. Corstiaan Brass, Sharon Novak, Marylou Weaver, Sandie Yeater, Dr. Marybeth Lopat-Winter, Dr. Justin Kanaley, Jennifer Daege, Edward Surowiec Dr. Wonhoon Park, and Dr. McCormack, Charles Gallagher, Christopher Anderson, James Brown, Phil Pawlowski, and Emil Cappelli all engaged in acts prohibited by HIPAA.

## 2.    Children's Removal

The Wrights allege that around February 15, 2008, Annmarie Albanese, a CPS caseworker, came to the Wrights' home and sought to enter. (Complaint ¶ 13.) When Paul Wright denied her access to his home, she threatened to return with the police and remove the children. (Id.) Plaintiffs further allege that eventually, by forgery and fabrication,[5]

---

[4]Plaintiffs do not detail the specifics of the call.

[5]They assert that Albanese later admitted to presenting false testimony in her application to the Judge. (Id. ¶ 3.)

Albanese applied for and received a warrant from Erie County Family Court Judge Margaret Szczur, which authorized the removal the Wright children from their home. (Id. ¶ 14.) They also claim that Judge Szczur, who apparently ordered the removal of the children based on neglect, is liable because her rulings were unnecessarily harsh and were carried out absent a pre-deprivation hearing. (Id. ¶¶ 15-17.) They also bring claims against the New York State Court Appellate Division, Fourth Department, which apparently affirmed Judge Szczur's order.  Further, Plaintiffs implicate Sam Endich,[6] Christopher Anderson, Andrew McLaren, and Gateway Longview, all of whom Plaintiffs believe were involved in the removal or detention of their children.

### 3.   Foster Parents

It appears that the Wright children were eventually split up and sent to two separate homes. According to the complaint, Janet Kelly was the foster parent for E.W. and M.W., while David and Linda Beckinghausen were the foster parents for N.W. and R.W. (Id. ¶¶ 27-30.) Plaintiffs allege that Janet Kelly mistreated E.W. and M.W., at one point screaming and shaking E.W. and at another point locking M.W. in a small room for over four hours. (Id. ¶ 27-28.)  As for the Beckinghausens, Plaintiffs allege that they improperly transferred N.W. from his school.  (Id. ¶ 30.) Plaintiffs claim that both Janet Kelly and the Beckinghausens told the Wright children that they had "already been adopted," which was apparently untrue. (Id. ¶¶ 31, 33.)

---

[6]The Wrights also allege that Sam Endich filed a false police report concerning an interaction he had with Paul Wright in March or April 2008.

### 4.      The Wrights' Medical Treatment

Finally, the Wrights allege claims arising from perceived mistreatment by various medical professionals. According to the complaint, on February 14, 2008, Theresa Wright went to Millard Fillmore Suburban's emergency room complaining of stomach pain. (Id. ¶ 4.) Once admitted, Dr. David James allegedly neglected to examine her abdominal area and instead examined only her foot. He then told her, "CPS is looking for you, you're going to Buffalo General [Hospital] for psychiatric evaluation. (Id.)  It is unclear whether Theresa ever went to Buffalo General, as Plaintiffs set forth no additional facts, claiming only that Dr. James and Dr. Cheryl Neely later falsified "a certificate."  (Id. ¶¶ 4-5.)

Unrelatedly, in March of 2008, Drs. Jack Coyne and Deborah Dee, working for the Child Advocacy Center allegedly examined all of the Wright children. (Id. ¶ 19.) Each of them complained of stomach pain, but, according to Plaintiffs, they were ignored and told the pain "was in their head." (Id.) At several points in early 2008, Albanese, Carolyn Isbrandt, and Janet Kelly all reacted the same way to the children's complaints, disregarding them and telling the children the pain was only "in their head." (Id. ¶¶ 22-25.)


### III.  DISCUSSION

#### A.      Legal Standard

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is

entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L .Ed. 2d 868 (2009)  ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2).  Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This

examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950. First, statements that are not entitled to the presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away. See Iqbal, 129 S. Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

## B.   Federal Claims[7]

*Pro se* litigants, like the Wrights, are entitled to broad consideration of their submissions. Federal courts routinely read *pro se* submissions liberally, and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This Court has considered the Wrights' submissions accordingly.

Because the analysis of some of the Wrights' claims applies equally to each defendant, those claims will be discussed first, followed by analysis applicable to specific defendants.

### 1.   Defendants at Large

#### i.   *HIPAA*

Its clear that the Wrights believe that several defendants violated medical privacy regulations found in HIPAA. However, enforcement of the HIPAA statute is limited to the Secretary of Health and Human Services. See Pub. L.  No. 104–191, 110 Stat.1936

---

[7]To the extent that the Wrights assert claims under the Fifth, Sixth, Seventh, Eighth, or Ninth Amendments, this Court finds no allegations in the Complaint that could plausibly fall in the ambit of the protections outlined in those amendments. They are therefore dismissed as against all Defendants without further discussion.

(1996); see also Nat'l Abortion Fed'n v. Ashcroft, No. 03 Civ. 8695, 2004 WL 555701, *2 (S.D.N.Y. Mar. 19, 2004).   HIPAA does not provide for a private right of action. Ames v. Group Health Inc., 553 F. Supp. 2d 187, 192 (E.D.N.Y. 2008) (finding that case law is "clear that plaintiffs cannot bring a HIPAA enforcement action due to improper disclosures of medical information"); Bayne v. Health Ins. Portability & Accountability Act, No. 11-CV-0321, 2012 WL 119617, at *6 (E.D.N.Y. Jan 17., 2012). As such, the Wrights' HIPAA claims are dismissed as against all defendants.

ii.      Perjury

Equally clear is the Wrights' belief that several defendants, specifically individual Erie County Defendants, committed perjury during the events leading to and during (what appears to be) the Wrights' custody hearing. This claim is also not actionable. 18 U.S.C. § 1621, the federal perjury statute, like the HIPAA statute, does not create a private right of action. See, e.g., Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002) ("We affirm the district court's dismissal of claims of sabotage, forgery, and perjury, which are crimes and therefore do not give rise to civil causes of action."). These claims are therefore dismissed as against all defendants.

iii.     RICO

The Wrights assert throughout the complaint that they are entitled to relief under 18 U.S.C. §§ 1962 and 1964. "To state a RICO claim, a plaintiff must plead (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. In addition, a plaintiff must plead injury to business or property as a result of the RICO violation."[8] Anatian v.

---

[8]Racketeering activity is defined at 18 U.S.C. 1961(1).

Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)).

Even under a liberal reading of the complaint, the Wrights do not allege that any defendant engaged in "conduct of an enterprise." See id. Further, RICO only provides recovery for injury to business or property; it does not provide recovery for physical or emotional injuries. Williams v. Dow Chemical Co., 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003); see also Le Paw v. BAT Indus. P.L.C., No. 96 Civ. 4373, 1997 WL 242132, at *2 (E.D.N.Y. Mar. 6, 1997) ("In other words, claims for personal injuries or emotional distress are not cognizable under RICO."). The Wrights, however, allege only that they suffered personal injuries, including emotional distress and the deprivation of constitutional rights. Thus, the  Wrights have not made out a *prima facie* RICO case, and their claims under this statute must be dismissed as against all defendants.

> iv.   *42 U.S.C. § 1983*

The gravamen of the Wrights' claims are brought pursuant to 42 U.S.C. § 1983 for perceived constitutional violations. Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).

Thus, to establish liability under § 1983, the plaintiff must satisfy two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the

9

defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998). "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999).

A court assessing the viability of a § 1983 claim must first determine whether the actions alleged were committed under color of state law. Carlos v. Santos, 123 F.3d 61, 65 (2d Cir.1997). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir.1996) (quoting West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988)).

Despite the fact that many defendants are private actors, the Wrights assert that nearly everyone named in their complaint was acting under color of state law. Mere conclusory labels, however, are insufficient under Iqbal and Twombly to survive a motion to dismiss. Instead, the Wrights must demonstrate, through factual allegations either that: (1) there was a "close nexus" between the private and state actors, (2) the private activity was a product of "state compulsion," or (3) the private actors performed a public function. Turturro v. Cont'l Airlines, 334 F. Supp. 2d 383, 394 (S.D.N.Y. 2004) (citing Okunieff v. Rosenberg, 996 F. Supp. 343, 347-57 (S.D.N.Y.1998), aff'd, 166 F.3d 507 (2d Cir.1999) (per curiam)).

The Wrights fail to meet any of these tests. It is evident that the Wrights feel that they and their children were at the whim of a system over which they had no control and

that somehow all these defendants acted in concert in wronging them. Their allegations, however, are simply too vague and indefinite. The Wrights provide no facts that could conceivably link the private actors to a state actor or function. Rather, they merely label private actors as "acting under state law" and allege various conspiracies without supporting facts. "Plaintiffs['] complaint offers no explanation of how [defendants] allegedly conspired with the state defendants, and provides no factual basis whatsoever to support [their] conspiracy theory." Mooney v. County of Monroe, 508 F.Supp.2d 222, 224 (W.D.N.Y. 2007). As the Second Circuit held: "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002).

Therefore, the motions to dismiss filed by the following private defendants regarding claims under § 1983 are granted: Buffalo General Hospital, Kaleida Health, Millard Fillmore Suburban Hospital, Buffalo Medical Group, Corstiaan Brass, James Panzarella, Family Care Medicine, Jennifer Daege,[9] Rite-Aid Pharmacies, Edward Surowiec, Amherst Health Center, Amherst University Health Center, Lifetime Medical Group, Barbara Stouter, Justin Kanaley, Marybeth Lopat-Winter, Sharon Novak, Tonawanda Pediatric, Marylou Weaver, Sandie Yeater, Robert McCormack, David James, Cheryl Neely, Cheri Carol-Alvarez, Lauren Dombrowski, Michelle Federowicz. Gateway Longview, Horizons Health Services,

---

[9] The Wrights do not mention Jennifer Daege in their complaint.

Carolyn Isbrandt, Andrew McLaren, Susan Seawood, Chrisy Smith, Janet Kelly,[10] and Stacey Sowinski.

## 2. Specific Defendants

### i. *Erie County Defendants*[11]

The crux of the Wrights' claims against the Erie County Defendants is that they fraudulently removed their children from their custody. The Defendants argue that this Court lacks jurisdiction to hear those claims under the *Rooker-Feldman* doctrine, which precludes federal courts from exercising jurisdiction over cases that are "inextricably intertwined" with a state court judgment. D.C. Court of Appeals v. Feldman, 460 U.S. 462, 483, n. 16, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). A federal case is inextricably intertwined with a state case if the federal claim "succeeds only to the extent that the state court wrongly decided the issues before it." Marden v. Dinin, 22 F. Supp. 2d 180, 185 (S.D.N.Y.1998) (quoting Pennzoil Co. v. Texaco, 481 U.S. 1, 25, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (Marshall, J., concurring)).

While the Wrights are certainly displeased with the result of the Family Court and New York State Court proceedings, their allegations also suggest that actions leading up to those proceedings violated their custodial rights. As such, the Wrights do not seek to appeal or call into question the Family Court decision so much as they seek to vindicate rights they believe were violated before the proceedings occurred. *Rooker-Feldman* does

---

[10]Because Janet Kelly is dismissed from this suit, Sam Endich's motion to dismiss her counterclaim (Docket No. 80) is denied as moot.

[11]This group consists of the Erie County Department of Social Services, Child Protection Services, Charles Gallagher, Annmarie Albanese, Christopher Anderson, James Brown, Yvonne Rychcik, Phil Pawlowski, and Emil Cappelli.

not divest this Court of jurisdiction over those claims. See McKithen v. Brown, 481 F.3d 89, 98 (2d Cir. 2007) ("[A] party is not complaining of an injury "caused by" a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been "caused by" those proceedings."); Green v. Mattingly, 585 F.3d 97 (2d Cir. 2009) (finding *Rooker-Feldman* inapplicable and noting that "[t]he situation would have been different if the Family Court had entered a final order of disposition permanently removing plaintiff's child from her custody *and plaintiff had brought this action seeking the return of her child"*) (emphasis added).[12]

With jurisdiction proper, Defendants next argue that the Wrights have failed to state a claim under Fed. R. Civ. P. 12(b)(6). This Court has found three plausible claims against the Erie County Defendants: the Wrights allege that Pawlowski made a "false report" of "suspected neglect." (Complaint ¶ 37); that Albanese "with the assistance of" Gallagher, Anderson, Brown, Pawlowski, and Cappelli "filed an application for a warrant that contained numerous false statements claiming 'imminent danger'" (Id. ¶ 13); and that Albanese "knowingly presented false information" in her application for a warrant to seize the Wright children (Id. ¶ 3).[13] Although pled inartfully and in a rather conclusory fashion, considering the Wrights' *pro se* status, such allegations state a valid claim under the Fourteenth Amendment's Due Process Clause. See Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir.1991)

---

[12]What is more, for *Rooker-Feldman* to apply, the Wrights must have had a full and fair opportunity to litigate these issues in Family Court. See, e.g., Velez v. Reynolds, 325 F.Supp.2d 293, 309 (S.D.N.Y. 2004). At this stage of the proceedings, this Court cannot determine what opportunities the Wrights had in that respect.

[13]Unless there was more than one warrant, the third allegation seems duplicative of the second.

("[T]he Supreme Court has instructed the district courts to construe *pro se* complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel.").

Parents "have a constitutionally protected liberty interest in the care, custody, and management of their children, and family members have a fundamental right under the Fourteenth Amendment to stay together." Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999). The Supreme Court has held that "[t]he liberty interest . . . of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L .Ed. 2d 49 (2000); Kia P. v. McIntyre, 235 F.3d 749 (2d Cir. 2000) (finding that the liberty interest of parent and child in continued care and companionship has both procedural as well as substantive elements).

These rights, however, are not absolute. The Second Circuit has recognized that the "constitutionally protected interest in . . . family integrity" must be "counterbalanced by the compelling governmental interest in the protection of minor children." Southerland v. City of New York, 652 F.3d 209, 230 (2d. Cir. 2011). "Because the law contemplates a careful balancing of interests, a parent's substantive constitutional rights are not infringed if a caseworker, in effecting a removal of a child from the parent's home, has a reasonable basis for thinking that a child is abused or neglected." Id.

At this stage of the litigation, this Court cannot say whether the Wrights' liberty interest in the continued care of their children was violated. The Wrights claim that the individual Erie County Defendants improperly removed their children from their care. Lacking the necessary information to determine whether this removal was proper under the

law, that is, whether there was a reasonable basis for thinking that the children were neglected, this Court cannot dismiss this claim against the individual Erie County Defendants.

Further, the Wrights have alleged the warrant application was procured through perjured testimony. Because "perjury by a[] [children services] caseworker to effectuate an otherwise improper removal may constitute a violation of procedural due process," Green ex rel. T.C. v. Mattingly, No. 07-CV-1790 (ENV), 2010 WL 3824119, at *9 (E.D.N.Y. Sept. 23 2010) dismissal is unwarranted. See Chi Chao Yuan v. Rivera, 48 F. Supp. 2d 335, 346 (S.D.N.Y.1999) ("The right to a fair tribunal includes the right to a proceeding free of perjury by state officials"); E.D. v. Tuffarelli, 692 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) (listing "manufacturing evidence" and "ignoring exculpatory information" as the sort of "obvious extremes" against which caseworkers are not protected); Morrison v. Lefevre, 592 F. Supp. 1052, 1073 (S.D.N.Y.1984) ("The introduction of false evidence in itself violates the due process clause.").

The Erie County Defendants argue that they are entitled to qualified immunity, which protects officials from § 1983 liability if their actions (1) did not violate clearly established law or (2) were objectively reasonable. See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999). However, if the Wrights establish that these Defendants violated their constitutional right to care for their children, they are not entitled to this immunity for two reasons. First, this law is clearly established. See, e.g., Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (noting Supreme Court's "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"). Second, without more facts, this Court cannot

15

conclude that it was objectively reasonable for these Defendants to believe that their conduct did not violate the Wrights' rights. It is alleged that they misrepresented and forged documents and testimony. Such acts are not objectively reasonable; Defendants are therefore not entitled to the protections of qualified immunity at this time.

However, the Wrights' claims cannot survive against the Erie County Department of Social Services and Child Protection Services; they must be dismissed under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978). A municipality may be held liable for damages under § 1983 only when execution of government policy or custom, or the failure to train, supervise, or discipline its employees inflicts the injury in question. Id. The Wrights allege no facts supporting such a policy, custom, or failure to supervise. Dismissal is therefore warranted.

The Wrights also contend that the Erie County Defendants violated the Fourth Amendment right against unreasonable searches and seizures in the removal of their children. Although the removal of a child may be construed as a "seizure" under the Fourth Amendment, see Tenenbaum, 193 F.3d at 602, and therefore may give rise to a § 1983 action, it can only be "brought on behalf of a child by a parent" and cannot be brought vicariously on behalf of the parents themselves. E.D. ex rel. V.D. v.Tuffarelli, 692 F. Supp. 2d 347, 366 (S.D.N.Y. 2010); see also Alderman v. United States, 394 U.S. 165, 174, 89, S. Ct. 961, 22 L. Ed. 2d 176 (1969). Because the Wrights, as *pro se* litigants, cannot represent the interests of their children, this claim is dismissed without prejudice. Chueng, 906 F.2d at 61.

ii.    *Sam Endich*

Sam Endich is a counselor at the Wright children's school, Heim Elementary.[14] (Amended Complaint, p. 4.)  The Wrights claim that Sam Endich (1)  allowed certain CPS personnel to conduct interviews with the Wright children, (2) filed a false police report against Paul Wright, and (3) assisted in the seizure of the Wright children from Heim Elementary. The Wrights assert that they are entitled to relief under § 1983.

The Wrights first and second allegations fail to implicate constitutional concerns. First,  "as a matter of law . . . no constitutional rights [are] implicated in the interview of [a minor child] at school without [the] parents' knowledge or consent."  Cornigans v. Mark Country Day Sch., No. CV 03-1414, 2006 WL 3950335 at *6 (E.D.N.Y.  July 12, 2006).[15] Second, although the filing of a false arrest report can constitute an unlawful seizure under the Fourth Amendment, see Paul v. Bank of Am. Corp., No. 09-CV-1932, 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011)), the Wrights do not allege that Paul was ever arrested pursuant to this report, foreclosing such a claim.

While the third allegation, that Endich "assisted" the CPS caseworkers removal of the children from their school, may state a Due Process claim akin to that discussed above, the Wrights admit that the caseworkers removed the children pursuant to a warrant. (Complaint ¶ 17.) Acting under this understanding, Endich's conduct was objectively reasonable and he is therefore entitled to the protections of qualified immunity. See Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998) (qualified immunity appropriate

---

[14]Endich does not argue that he is a private actor.

[15]Even if the interviews could be construed as a Fourth Amendment false arrest claim, it would be the children's claim, not their parents.

17

where it was objectively reasonable for official to believe his acts did not violate clearly established rights).  Therefore, his motion to dismiss is granted.

### iii.   *Child and Adolescent Treatment Services, Inc.*

Although served with a summons and complaint, the Wrights allege no claims against Child and Adolescent Treatment Services, Inc. ("Treatment Services"). They only allege that Dr. Jack Coyne and Deborah Dee worked for the "Child Advocacy Center, Erie County Dept. Of Social Services" and, in that capacity, violated their children's constitutional rights. Treatment Services denies that it employs Dr. Coyne or Dee. In any event, even if this claim is proper as against Treatment Services, it is dismissed without prejudice for the same reasons as discussed immediately below.

### iv.   *Dr. Jack Coyne, M.D., and Deborah Dee, N.P.*

The Wrights allege that Dr. Coyne and Dee  acted with deliberate indifference towards their children when they ignored the Wright children's complaints about stomach pain. But, these are alleged violations of their children's rights. The Wrights, as *pro se* plaintiffs, cannot bring an action on behalf of their children. Therefore, this Court cannot address these claims at this time. Cheung, 906 F.2d at 61.  As such, claims against Dr. Coyne and Dee are dismissed without prejudice.

### v.   *Judicial Defendants*

The Wrights also bring this suit against Family Court Judge Margaret Szczur, several justices of the Fourth Department, and the Family Court and Fourth Department themselves. These claims are dismissed. The allegations against the judges all fall within their official capacity. State court judges, including those sitting on Family Court, are absolutely immune from damage suits pursuant to § 1983. Stump v. Sparkman, 435 U.S.

349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); <u>Dorman v. Higgins</u>, 821 F.2d 133, 137 (2nd Cir 1987); <u>Fariello v. Rodriguez</u>, 148 F.R.D. 670, 678 (E.D.N.Y. 1993) (applying absolute immunity to Family Court judges).

The courts themselves are also immune from suit under the Eleventh Amendment. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); <u>Mathis v. Clerk of the First Dep't</u>, 631 F. Supp. 232, 234 (S.D.N.Y. 1986) ("The Appellate Division, a state court, is . . . immune from suit by virtue of the Eleventh Amendment). These Defendants' motion to dismiss is therefore granted.[16]

## C.    State Claims

The Wrights only cognizable state-law claim is one for intentional infliction of emotional distress. However, under New York law, claims for intentional infliction of emotional distress are subject to a one-year statute of limitations. <u>See</u> N.Y. C.P.L.R, § 215(3); <u>Patterson v. Balsamico</u>, 440 F.3d 104, 112 (2d Cir. 2006). The Wrights filed this suit on February 15, 2011, and their claim accrued no later than October 2009 – the latest date that the Wrights allege such a tortious act. Accordingly, to the extent that these claims are asserted on behalf of the parents themselves, they are time-barred and dismissed. The Wrights also allege that their children were denied adequate medical care and unlawfully imprisoned, but those claims, in addition to any children's emotional distress claims, are dismissed without prejudice for the reasons previously articulated.

---

[16]Insofar as the Wrights seek to overturn either of the these courts' rulings, such a claim would be barred by *Rooker-Feldman*.

**IV. CONCLUSION**

All told, the Wrights can proceed with one claim against one set of Defendants: a substantive and procedural Due Process violation against the individual Erie County Defendants, alleging that they improperly procured a warrant and illegally removed their children from their custody. For the foregoing reasons, all other motions to dismiss, including that of the municipal Erie County Defendants, are granted. Claims brought on behalf of the Wright children are dismissed without prejudice.

**V. ORDERS**

IT HEREBY IS ORDERED, that Amherst Health Center, Amherst University Health Center, Jack Coyne, Lifetime Health Medical Group, and Barbara Stouter's (Docket No. 98) Motion to Dismiss is GRANTED.

FURTHER, that Buffalo General Hospital, Deborah Dee, Kaleida Health, and Millard Filmore Suburban Hospital's Motion to Dismiss (Docket No. 99) is GRANTED.

FURTHER, that Jennifer Daege, Rite Aid Pharmacies, and Edward Surowiec's Motion to Dismiss (Docket No. 100) is GRANTED.

FURTHER, that  Cheri Carrol-Alvarez, Lauren Dombrowski, Michelle Federowicz, Gateway Longview, Horizons Health Services, Carolyn Isbrandt, Andrew J. McLaren, Susan Seawood, Chrisy Smith, and Stacey Sowinski's Motion to Dismiss (Docket No. 101) is GRANTED.

FURTHER, that Sam Endich's Motion to Dismiss (Docket No. 102) is GRANTED.

FURTHER, that Janet Kelly's Motion to Dismiss (Docket No. 103) is GRANTED.

FURTHER, that Child Advocacy Center Inc.'s Motion to Dismiss (Docket No. 105) is GRANTED.

FURTHER, that David James, Robert McCormack, Cheryl Neely's Motion to Dismiss (Docket No. 106) is GRANTED.

FURTHER, that Corstiaan Brass, Buffalo Medical Group, Family Care Medicine, and James Panzarella's Motion to Dismiss (Docket No. 107) is GRANTED.

FURTHER, that Annmarie Albanese, Christopher Anderson, James Brown, James Brown, Emil Cappelli, Child Protection Services, Erie County Dept. of Social Services, Charles Gallagher, Phil Pawlowski, and Yvonne Rychcik's Motion to Dismiss (Docket No. 109) is GRANTED with respect to the municipal defendants and DENIED with respect to the individual Defendants.

FURTHER, that Justin Kanaley, Marybeth Lopat-Winter, Sandie Yeater, Sharon Novak, Tonawanda Pediatric, and Marylou Weaver's Motion to Dismiss (Docket No. 110) is GRANTED.

FURTHER, that JJ Centra, Erie County Family Court, P.J. Hurlbutt, Salvatore Martoche, New York Appellate Division, Fourth Department, Henry Scudder, Nancy Smith, and Margaret O. Szczur's Motion to Dismiss (Docket No. 123)  is GRANTED.

FURTHER, that Sam Endich's Motion to Dismiss Janet Kelly's Counterclaim (Docket No. 80) is DENIED as moot .

FURTHER, that Plaintiffs' Motion to Attach a Memorandum of Law (Docket No. 88) is DENIED.

FURTHER, that Janet Kelly's Motion to Strike Answer (Docket No. 89) is DENIED as moot.

SO ORDERED.


Dated:       January 28, 2012
             Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court